UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>v.<br><br>RISHI SHAH,<br>SHRADHA AGARWAL,<br>BRAD PURDY, and<br>ASHIK DESAI | No. 19 CV 7528<br><br>Judge Thomas Durkin |

**GOVERNMENT'S MOTION TO INTERVENE
AND STAY CIVIL PROCEEDINGS**

The UNITED STATES OF AMERICA, by LINDSAY JENKINS, Attorney for the United States Acting Under Authority Conferred by 28 U.S.C. § 515, and ROBERT ZINK, Chief of the Fraud Section of the Criminal Division, U.S. Department of Justice, respectfully moves this Court for an order (a) permitting the United States to intervene in this civil case and (b) staying discovery in this case until the resolution of the related and recently indicted criminal case.

**I.     BACKGROUND**

On November 25, 2019, the plaintiff in this case, the Securities and Exchange Commission ("SEC"), filed an amended complaint alleging that Rishi Shah, Shradha Agarwal, Brad Purdy, and Ashik Desai, all former executives of Outcome Health, violated the antifraud provisions of the federal securities laws by raising $487.5 million from investors based on false information. Doc. No. 9. On November 21, 2019,

1

a federal grand jury in the Northern District of Illinois returned a superseding indictment charging the same four defendants with—among other violations—mail fraud, wire fraud, and bank fraud in connection with a scheme at Outcome Health to sell advertising that did not exist and then raise almost $1 billion in debt and equity financing. *See United States v. Shah et al.,* 19 CR 864 (N.D. Ill.) (Durkin, J.).[1]

In addition to the overlapping defendants in both the SEC's case and the criminal case, both the SEC's complaint and the criminal indictment involve overlapping facts and law. Specifically, according to both the SEC's amended complaint and the criminal superseding indictment, for many years the four defendants caused Outcome Health to bill clients and collect revenue for advertising that never ran. This was accomplished by: (1) misrepresenting to potential clients the amount of advertising inventory that was available during the contracting process; (2) misrepresenting to clients that Outcome had delivered on their advertising campaigns in accordance with the terms of their contracts when this was not true; and (3) billing and collecting revenue from clients as if the contracts had been fully met. According to both the SEC's amended complaint and the superseding indictment, these practices resulted in inflated financial statements that reflected revenue Outcome had never earned. The defendants then used the inflated financial

---

[1] An information charging Ashik Desai with one count of wire fraud was filed on November 14, 2019. The SEC filed its original complaint against Ashik Desai as the sole defendant on the same day. On December 9, 2019, Desai pled guilty in the criminal case. The guilty plea plea has likely narrowed the issues in the SEC case as to Desai.

information to raise almost $1 billion capital. The SEC compliant focuses on a $487.5 million capital raise in 2017; the criminal indictment includes that capital raise plus a $110 million loan and a $375 million loan obtained in 2016. Both the SEC's amended complaint and the superseding indictment allege that the defendants knowingly used the inflated financial statements to raise the capital.

As of the date of this motion, none of the defendants in the SEC's case has filed an answer to the complaint, and the parties have not yet filed a Rule 26(f) report or otherwise engaged in discovery. The United States now seeks to intervene in this civil proceeding in order to seek a stay of discovery pending resolution of the criminal case.

The SEC takes no position on the motion. Desai does not oppose the motion. Counsel for Shah and Agarwal have advised the government that they are unable to take a position on this motion in light of Shah and Agarwal's pending motion to amend the protective order in the criminal case. Purdy prefers not to take a position on this motion until he knows Shah and Agarwal's position on the motion.

## II.     INTERVENTION IS APPROPRIATE

The United States' intervention in this case is appropriate, and the Court has the power to grant the government's motion under Rule 24 of the Federal Rules of Civil Procedure. Rule 24 authorizes two forms of intervention: intervention as of right, and intervention as a matter of discretion. Intervention as of right is governed by Rule 24(a)(2), which provides that "anyone shall be permitted to intervene in an

action…when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is represented by existing parties." To intervene as of right under this rule, an applicant must demonstrate that "(1) the application is timely; (2) the applicant has an 'interest' in the property or transaction which is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest." *Security Ins. of Hartford v. Schipporeit,* 69 F.3d 1377, 1380 (7th Cir. 1995).

Under Rule 24(b)(2), discretionary intervention is appropriate "when the applicant's claim or defense and the main action have a question of law or fact in common." To intervene under this portion of the Rule, an applicant must show the existence of a common question of law or fact and independent jurisdiction. *Schipporeit,* 69 F.3d at 1380. Further, under Rule 24(b)(2), "[i]n exercising that discretion, the court must give some weight to the impact of the intervention on the rights of the original parties." *Id.*

In this context—that is, where there is both a pending SEC civil case and a related criminal case—courts have routinely allowed the government to intervene in the civil case for the purpose of requesting a stay. *SEC v. Custable*, 1:03-cv-02182 at Doc. No. 266 (N.D. Ill. April 14, 2005); *SEC v. Downe,* 1993 WL 22126 *11 (S.D.N.Y.,

4

Jan. 26, 1993) ("It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact."). Such interventions have been granted both as a matter of right under Rule 24(a)(2), *e.g., SEC v. Mutuals.com. Inc.,* 2004 WL 1629929 (N.D. Tex., July 20, 2004), and as a matter of discretion under Rule 24(b)(2), *e.g., SEC v. Chestman,* 861 F.2d 49, 50 (2nd Cir.1988); *SEC v. Mersky,* 1994 WL 22305 (E.D. Pa., Jan. 25, 1994); *Downe,* 1993 WL 22126.

In this case, intervention by the United States is appropriate both as a matter of right and as a matter of discretion. First, the government's motion is timely, having been brought just weeks after the criminal indictment was returned and before the commencement of civil discovery in the SEC's case.

Second, there is substantial factual overlap between the civil enforcement action brought by the SEC and the pending criminal case. As noted above, the investor schemes in the two cases are largely the same, and the four defendants in the SEC's case are also defendants in the criminal case.

Third, the government's interest in this case will be impacted if this Court does not stay the SEC's civil case. Under similar circumstances, courts have determined that a stay is appropriate in order to avoid unfair prejudice to the United States by permitting the defendants to obtain civil discovery to which they would not otherwise be entitled in a criminal case, including taking depositions of the government's

5

witnesses. *See, e.g., Downe*, 1993 WL 22126, at *12-13 (granting stay in part because defendants would otherwise be able to obtain testimony via civil discovery from the government's witnesses). Moreover, "even though the SEC is involved in this action, the United States Attorney may have an interest in this litigation which is qualitatively different from the SEC's interest." *Downe,* 1993 WL 221126 at *12; *Mutuals.com,* 2004 WL 1629929 at *2.

Accordingly, the government requests that it be permitted to intervene in this civil case for the purpose of seeking a temporary stay of discovery.

### III. DISCOVERY IN THIS CASE SHOULD BE TEMPORARILY STAYED PENDING RESOLUTION OF THE CRIMINAL CASE

Based on a district court's inherent power to control and manage its docket, this Court has authority to stay all or any portion of this case. *See Landis v. North American Co.,* 299 U.S. 248, 255 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Benevolence International Foundation, Inc. v. Ashcroft,* 200 F. Supp. 2d 935, 938 (N.D. Ill. 2002).

In determining whether to stay proceedings and the scope of any stay order, courts examine "a variety of factors." *Benevolence International Foundation, Inc.,* 200 F. Supp. 2d at 938; *Downe,* 1993 WL 22126 at *12. One factor courts often examine is whether the criminal matter has ripened into an indictment or remains an investigation. *See, e.g., Trustees of Plumbers and Outfitters National Fund v.*

6

*Transworld Mechanics. Inc.,* 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct."); *Mutuals.com,* 2004 WL 1629929 at *3.

Courts also evaluate whether the civil plaintiff opposes the stay, *Mutuals.com,* 2004 WL 1629929 at *3; *SEC v. Mersky*, *1994 WL 22305*, at *3 (E.D. Pa. Jan. 25, 1994), and whether the civil defendants would somehow be prevented from resuming a defense to the civil case once a stay is lifted, *Mutuals.com,* 2004 WL 1629929 at *4; *Mersky,* 1994 WL 22305 at *3.

Another factor that courts evaluate is whether the criminal prosecution will be compromised by allowing the civil case—and the use of civil discovery procedures—to continue. *Benevolence International Foundation, Inc.,* 200 F. Supp. 2d at 939-940; *Mersky,* 1994 WL 22305 at *4; *Downe,* 1993 WL 22126 at *12-13. Courts have acknowledged "the great weight" that should be accorded to protecting the government's interest in preserving its ability to prosecute the criminal case without interference from the civil case. *Mersky*, 1994 WL 22305 at *4 (citing *United States v. Stewart,* 872 R2d 957, 962-63 (10th Cir. 1989)); *Chestman,* 861 F.2d at 50). As these courts have noted, the focus is not on a civil party's intent in seeking discovery under the liberal civil discovery rules, but the effect that such discovery could have on the criminal prosecution. *E.g., Mersky,* 1994 WL 22305 at *5 (citing *Integrated Generics v. Bowen,* 678 F. Supp. 1004, 1009 (E.D.N.Y. 1988)); *see also Benevolence International Foundation, Inc.,* 200 F. Supp. 2d at 939 ("[A] trial court should not

7

permit a defendant in a criminal case to use liberal civil discovery procedures to gather evidence to which he might not be entitled under the more restrictive criminal rules.").

Finally, in determining whether to stay a civil proceeding, courts often examine whether a stay may result in saving judicial resources because "any successful criminal prosecutions may streamline discovery and trial of the civil case once the stay is lifted. *Mersky,* 1994 WL 22305 at *4; *Benevolence International Foundation, Inc.,* 200 F. Supp. 2d at 940-41.

After examining these factors, courts have routinely issued stays of SEC civil enforcement actions pending the resolution of related criminal cases. *See, e.g., Chestman,* 861 F.2d 49; *SEC v. Doody,* 186 F. Supp. 2d 379 (S.D.N.Y. 2002); *Mutuals.com,* 2004 WL 1629929; *SEC v. Beacon Hill Asset Management,* 2003 WL 554618 (S.D.N.Y., Feb. 27, 2003); *SEC v. Tandem Management,* 2001 WL 14488218 (S.D.N.Y. Nov. 21, 2001); *SEC v. HGI Inc.,* 1999 U.S. Dist. LEXIS 17377 (S.D.N.Y., Nov. 9, 1999); *Mersky* 1994 WL 22305; *Downe,* 1993 WL 22126. Further, several courts in this district have stayed non-SEC civil cases pending the resolution of related criminal cases. *See, e.g., United States v. All Meat And Poultry Products,* 2003 WL 22284318 (N.D. Ill., Oct. 3, 2003); *Benevolence International Foundation, Inc.,* 200 F. Supp. 2d 935; *Cruz v. County of DuPage,* 1997 WL 370194 (N.D. Ill., June 27, 1997); *United States v. Michelle's Lounge,* 1992 WL 194652 (N.D. Ill., Aug. 6, 1992); *Marino v. Hegarty,* 1987 WL 9582 (N.D. Ill., April 10, 1987).

In this case, virtually all factors weigh in favor of staying discovery until the criminal case is completed. As an initial matter, the criminal case is pending, with an indictment having been returned on November 21, 2019, and unsealed on November 25, 2019. Further, at this point, none of the relevant parties object to this motion. Specifically, the SEC takes no position on the motion. Desai does not object to the motion. The remaining three SEC defendants are not taking a position on the motion.

In addition, neither the SEC nor any of the defendants will be prejudiced in defending the civil case following the conclusion of the criminal case. As part of discovery in the criminal case, the United States has already produced discovery that includes more than 100 memoranda of interviews. The government is also attempting to obtain and produce to the criminal defendants virtually *all* of the documents produced to the SEC to date during its investigation.[2] In addition, it is likely that one or more of the civil defendants, and possibly other witnesses, would invoke their Fifth Amendment rights in response to notices of deposition. *See SEC v. Nicholas*, 569 F.Supp.2d 1065, 1070 (C.D. Cal. 2008) ("The specter of parties and witnesses invoking their Fifth Amendment rights would render civil discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the Defendants.").

---

[2] The government understands that—with respect to numerous entities that produced records—the SEC has obtained the same documents in its civil investigation that the government obtained during the criminal investigation. To the extent that the SEC obtained documents in the civil investigation that the government did not obtain in the criminal investigation, the government is attempting to obtain those documents and will produce them to the defendants in the criminal case.

Finally, considerations of judicial economy and the public interest in efficient use of judicial resources also favor the grant of a stay. For example, issues common to both cases can be resolved in the criminal proceedings, narrowing or eliminating factual issues in the civil litigation. Further, a stay "may streamline later civil discovery since transcripts from the criminal case will be available to the civil parties." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1011 (E.D.N.Y. 1992) (granting stay over objection of civil defendants); *see also, e.g., In re Grand Jury Proceedings,* 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues"); *United States v. Mellon Bank*, 545 F.2d 869, 872-73 (3d Cir. 1976) (affirming district court's determination that "judicial economy would best be served by a stay of civil proceedings"); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) (noting that resolution of the criminal case "might reduce the scope of discovery in the civil case or otherwise simplify the issues"). Finally, "collateral estoppel in the criminal case may expedite the resolution of the civil case." *Nicholas*, 569 F. Supp. 2d at 1070.

Accordingly, the government requests that the Court issue a stay of discovery in this case until the resolution of the criminal case.

## IV. CONCLUSION

For the foregoing reasons, the government requests that the Court grant its motion to intervene and stay all discovery in this case pending further order of the

10

Court and pending the resolution of the related criminal matter captioned *United States v. Shah, et al.,* 19 CR 864 (N.D. Ill., Nov. 21, 2019).

    Respectfully submitted,

    LINDSAY JENKINS
    Attorney for the United States
    Acting under Authority Conferred by
    28 U.S.C. § 515


By: /s/ Matthew Madden
    MATTHEW F. MADDEN
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5300


    ROBERT ZINK
    Chief, Fraud Section
    Criminal Division
    U.S. Department of Justice


By: /s/ William Johnston
    WILLIAM E. JOHNSTON
    Assistant Chief
    KYLE HANKEY
    Trial Attorney
    1400 New York Ave NW
    Washington, DC 20530
    (202) 514-0687